# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **THE PINES CHURCH**, a Maine non-profit corporation; **Matt Gioia**, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>**HERMON SCHOOL DEPARTMENT;**<br><br>Defendant. | Civil Action No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**Jury Trial:** ☒ Yes   ☐ No |

**NOW COMES** Plaintiffs, The Pines Church, a Maine non-profit corporation, and Matt Gioia, an individual, by and through its attorneys Conley & Wirick, P.A., and Advocates for Faith & Freedom, LLP, and hereby complains against Defendant Hermon School Department as follows:

## JURISDICTION AND VENUE

1. This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983.

2. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This action also arises under Article I, §§ 4, 6-A, and 15 of the Maine Constitution (freedom of speech, right to equal protection, and right of assembly).

4. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

5. This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343,

pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because Defendant is situated in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION

7. This action seeks to hold the Hermon School Department ("HSD"), including the Hermon School Committee ("the Committee"), responsible for its explicit hostility toward The Pines Church ("TPC") and Pastor Matt Gioia ("Pastor Matt") through its discriminatory and unlawful denial of a lease agreement to the Church based on its religious beliefs.

8. In 2020, Pastor Matt uprooted his family from Colorado to establish TPC in central Maine. Pastor Matt chose the state of Maine to establish TPC, as the state ranks in the top ten for opioid addiction and overdoses, and there are few Christians in the state.

9. Following its founding in 2021, TPC experienced rapid growth. The people of Maine were hungry for hope. In just shy of a year, the congregation outgrew its current meeting space at a local movie theater and needed a more accommodating facility.

10. In November 2022, TPC was negotiating a deal with HSD to rent space at Hermon High School for its Sunday services when members of the Committee presented TPC with questions about TPC's religious beliefs, such as its stance on gay marriage, abortion, conversion therapy, gender reassignment treatment, and sexual education for youth.

11. The Committee's questions were inappropriate and not germane to whether TPC qualifies for a lease. Indeed, upon information and belief, the Committee has not asked these questions to similarly situated secular entities and activities who have leased its facilities.

12. The implications of the Committee's questions are clear; unless TPC affirms HSD's religious and political beliefs, the Committee will not support TPC's lease proposal. Negotiations between TPC and the Committee have since fallen through.

13. The Committee's actions violate the Religious Land Use and Institutionalized Persons Act, Maine Public Accommodation Laws, as well as the Free Exercise Clause, Free Speech Clause, and Establishment Clause of the First Amendment to the United States Constitution.

## PARTIES

14. Plaintiff The Pines Church, a Maine non-profit corporation, is a Christian church organized exclusively for religious purposes. TPC is located in the city of Bangor, Maine.

15. Plaintiff Matt Goia is a resident of Penobscot County and the lead pastor of TPC.

16. TPC and Pastor Matt are hereinafter collectively referred to as "the Church."

17. Defendant Hermon School Department is a school district located in Hermon, Maine. HSD is governed by a school board, the Hermon School Committee, which is comprised of seven members. In Maine, local control over education is established by article VIII, section 1 of the Maine Constitution and the Maine Education Code, including 20–A M.R.S.A. § 2(2) and 20–A M.R.S.A. § 1001. The Maine Education Code also confers power upon school boards to adopt policies, manage school property, and select courses for study, among other duties. 20–A M.R.S.A. § 1001.

## FACTUAL BACKGROUND

**A.  HSD's Leasing Process**

18. HSD offers its facilities for community use via long-term or short-term lease arrangements. Pursuant to HSD's Community Use of Facilities policy, the Herman School Committee ("the Committee") must authorize any long-term lease. Short-term use of school facilities must be approved by the school's principal. A true and correct copy of HSD's Community Use of Facilities policy is attached hereto as **Exhibit A.**

19. Organizations seeking short-term leases must also complete HSD's Building/Facilities Request Form. This is the only form required to be completed by organizations and seeks basic information regarding the areas requested and date/times requested. No inquiry is made into the beliefs of the organization. A true and correct copy of HSD's Building/Facilities Request Form is attached hereto as **Exhibit B.**

20. HSD committee meeting minutes reflect that the Committee previously approved two-long term leases of other HSD facilities, including Hermon Elementary School. True and correct copies of these meeting minutes are attached hereto **as Exhibits C and D**.

21. For example, the Committee approved a lease with a special education organization to lease two special education classrooms and the playground area at Hermon Elementary School for a term of two years.

22. Upon information and belief, Hermon High School is currently rented out by various organizations, including Black Bear Basketball, Hermon Recreation, Boy Scouts, Girl Scouts, and various baseball organizations, among others, for periods of three to six months.

23. Some of these organizations meet several times a week. For example, Black Bear Basketball hosts fall and winter basketball leagues at various HSD schools on Saturdays and Sundays, in addition to practices throughout the week and various tournaments throughout the year. Black Bear Basketball runs over 180 games each weekend at HSD facilities, bringing in hundreds of visitors.

24. Upon information and belief, Hermon High School facilities have also been used by political organizations and candidates for rallies, debates, or speeches.

25. Upon information and belief, HSD has not required an applicant of either a short-term or long-term lease to provide its stance on political and/or religious issues such as sexual orientation, gender reassignment care, conversion therapy, or abortion.

B.   **The Pines Church Pursuit of a Lease at Hermon High School**

26. TPC is a non-denominational Christian church which maintains biblically orthodox religious beliefs and practices regarding human sexuality, marriage, and abortion, as most Christian churches have faithfully maintained for the past two thousand years.

27. TPC believes that God defines human sexuality, and that men and women are created in the image of God.

28. The Church first began holding services at Spotlight Cinema, 6 Stillwater Ave, Orono, Maine. However, the Church quickly outgrew this space.

29. In September of 2022, the Church began seeking new lease options and locations. The Church desired to relocate to Hermon, ME, as many families in the congregation, including Pastor Matt and his family, reside in Hermon.

30. As Pastor Matt began looking for rental opportunities in Hermon, he quickly realized that Hermon had no available rental spaces. The Church inquired about the town's one event venue, Morgan Hill Event Center; however, the event center could not offer the Church a lease due to the high volume of weddings at the venue on Sundays.

31. After coming up short, congregation members suggested Pastor Matt explore Herman High School facilities, as the location would allow the Church to serve the Hermon community more directly and the high school space would allow the Church to meet its growing needs.

32. In September 2022, the Church called the high school's administrative assistant, Cindy Morgan, to discuss leasing requirements. Pastor Matt was informed that all leases had to go through the school's principal.

33. The discussions with the principal were not fruitful, so Pastor Matt then contacted Superintendent Grant directly on or around September 23, 2022. After reaching out via email, Pastor Matt met with Superintendent Grant several times to negotiate a potential rental agreement. Superintendent Grant was consistently open about the Church's proposal to lease school facilities and frequently expressed his willingness to help accommodate the needs of the Church.

34. During two of their meetings, Superintendent Grant walked Pastor Matt through the high school to show him the potential spaces for church use. These spaces included the High School's theater, cafeteria, and two classrooms.

35. After their third meeting on or around October 19, 2023, Superintendent Grant asked Pastor Matt to submit a written proposal to the Committee, followed by an oral presentation at the next school board meeting to explain the Church's vision for renting HSD facilities.

36. To Pastor Matt's understanding, the presentation was just a formality. Superintendent Grant did not request Pastor Matt provide the church's stance on different political and religious issues.

37. On November 7, 2022, Pastor Matt presented to the Committee information regarding the Church and its vision for leasing space at Hermon High School for a period of one year. Pastor Matt explained that the Church would bring in its own sound equipment and would set up, break down, and clean up after services. Pastor Matt also extended an offer to rent the high school spaces for $1,000 a month – $400 above HSD's proposed rent amount – to display the Church's serious intent to invest in the Hermon community.

38. Following Pastor Matt's presentation, committee member Chris McLaughlin sent a November 8, 2022, email to HSD Superintendent Grant in which he stated he wanted to get a better sense of how the Church approaches issues of "diversity, equity and inclusion."

39. The email contained follow-up questions from the Board inquiring about the Church's beliefs on same-sex marriage, abortion, gender-affirming medical care, conversion therapy for LGBTQ individuals, and sex education for youth. A true and correct copy of McLaughlin's email is attached hereto as **Exhibit E**. Again, these questions had no bearing on whether the Church qualified for a lease.

40. Superintendent Grant forwarded the questions to Pastor Matt seeking the church's views and stances on these issues to forward to the Committee for review. A true and correct copy of Superintendent Grant's email is attached hereto as **Exhibit F.**

41. Upon information and belief, the Committee did not ask these questions to other lease applicants.

42. Pastor Matt did not respond to the Committee's inquiries as to the Church's beliefs on same-sex marriage, abortion, gender reassignment care, conversion therapy for LGBTQ individuals, and sex education for youth.

43. The Committee asked Pastor Matt to present his lease proposal to the Committee during a school committee meeting. Upon information and belief, the Committee did not require other long-term lease applicants to present to the Committee.

44. On December 12, 2022, the Committee met to consider Pastor Matt's six-month and one-year lease proposals. During the meeting, Superintendent Grant informed the Committee that the school frequently rents out its facilities to various organizations, confirmed that the facilities the Church sought

to utilize were available on Sundays, and assured the Committee that legal counsel found no Establishment Clause concerns.

45. The Committee voiced various concerns about the Church's lease proposal, none of which were related to whether the Church was a qualified lessee.

46. For instance, one committee member expressed that leasing to the Church did not fit the Committee's goals.

47. Other committee members and Principal Walsh brazenly made discriminatory comments about the Church by suggesting HSD's association with the Church and its religious beliefs would create a negative public image.

48. Principal Walsh even insinuated that HSD could not associate themselves with the Church because their religious and political beliefs do not align with HSD's mission.

49. The Committee's religious discrimination and hostility toward the Church were guised as concerns as evidenced by the fact that the requested spaces are often utilized by secular organizations throughout the week.

50. Upon information and belief, the Committee does not believe the other secular, unaffiliated organizations and activities it leases to in one-month, six-month, or one-year terms create a negative public image. In fact, they actively promote these organizations, such as Black Bear Basketball, AAU Basketball, Boy Scouts, and Girl Scouts, by allowing them to post signs and banners promoting their activities.

51. The Committee denied Pastor Matt's proposal to lease the high school for either sixth months or one year because of its religious beliefs on abortion, sexual orientation, gender reassignment care, conversion therapy, and gay marriage.

52. The Committee instead voted to allow the Church to rent school facilities on a month-to-month basis, despite month-to-month leases not needing Committee approval and despite Pastor Matt previously relaying that a month-to-month lease would not work.

53. Indeed, the Committee was aware of this, as evidenced by the fact that one committee member during the committee meeting stated the Church needed stability. The remaining committee members disregarded the Church's need for stability.

54. Superintendent Grant and Pastor Matt met on December 21, 2022, and Pastor Matt expressed his disappointment with how the Committee handled the lease proposal. Pastor Matt asked if Superintendent Grant could put a six-month lease back on the docket for the next school board meeting. Superintendent Grant expressed that he would.

55. On January 6, 2023, Superintendent Grant relayed via email that a six-month lease would not be added to the next meeting agenda, but that an offer stood for a month-to-month lease, even though Superintendent Grant was aware that a month-to-month lease was not feasible for the Church.

56. Superintendent Grant brought the Church's request for a six-month lease to the Committee chair for agenda consideration. The Church's request was not added to the agenda, as a motion was made for a six-month lease but was not seconded.

57. A month-to-month lease is not feasible for the Church because it makes it impossible to plan and budget and allows HSD to terminate the lease on short notice, leaving the Church with nowhere to go.

58. The Church has suffered damages, as it has been unable to find a location that can accommodate its growing congregation. The Church is renting a theater that cannot accommodate its needs.

59. Based on the cooperation and affirmations of Superintendent Grant, Pastor Matt never believed that HSD would deny the Church a sixth-month or year-long lease. Pastor Matt believed the presentation before the Committee was simply a formality.

60. On March 16, 2023, the Church sent a demand letter to HSD, explaining that it had violated its constitutional rights and Maine's public accommodation laws.

61. On March 27, 2023, HSD improperly denied any wrongdoing and refused to offer the Church damages.

## COUNT I - VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSON ACT ("RLUIPA")

62.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 61, as if fully set forth herein.

63.     Pursuant to RLUIPA, a land use regulation may not impose a substantial burden on religious exercise unless it is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc(a)(1).

64.     RLUIPA's substantial burden provision applies whenever "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C); *See Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 985 n.6 (9th Cir. 2006) ("RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.").

65.     HSD's application of its Community Use of Facilities policy to the Church constitutes an "implementation of a land use regulation or system of land use regulations, under which a government makes ... individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C). HSD's policy allows the Committee to review property uses on a case-by-case basis.

66.     The Church's operation of its church constitutes religious exercise within the meaning or RLUIPA and failing to approve its application for a long-term lease of Hermon High School facilities substantially burdens that exercise. The Church does not have readily available lease alternatives in Hermon and an inability to lease space at Hermon High School prevents the Church from fulfilling its religious mission to reach the people of Hermon, Maine with the hope and love of Jesus Christ.

67.     There exists no compelling governmental interest justifying denial of the Church's long-term lease proposal. Committee members expressed concerns regarding priority of student use of school property, parking, and public perception. However, Superintendent Grant confirmed that the Hermon

High School facilities were available on Sundays, that parking would not be an issue, and that the lease does not implicate Establishment Clause issues.

68. HSD's denial of the Church's long-term lease is not the least restrictive means of furthering these interests. There are other ways of addressing the Committee's concerns beyond outright denial. HSD's decision was made in an arbitrary and capricious manner and targeted the Church because of its religious beliefs.

69. Defendant also violated RLUIPA by treating Plaintiffs on "less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

70. RLUIPA's equal terms provision is violated when a secular comparator that is similarly situated regarding the objectives of the challenged regulation is better treated than a religious plaintiff. *See Signs for Jesus v. Town of Pembroke, NH,* 977 F.3d 93, 109 (1st Cir. 2020).

71. Defendant treated the Church on less than equal terms with various organizations, including Black Bear Basketball, Hermon Recreation, Boy Scouts, Girl Scouts, and various baseball organizations. These organizations are all permitted to rent out Hermon High School facilities for periods of four to six months. The Church was only offered a month-to-month lease – an arrangement that is not feasible for the Church. Thus, the Church was not treated on equal terms as other similarly situated organizations.

72. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

73. WHEREFORE, Plaintiffs respectfully pray for the relief against Defendant as hereinafter set forth in the prayer for relief.

**COUNT II - VIOLATION OF PLAINTIFFS' RIGHT TO FREE EXERCISE UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

74. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 73, as if fully set forth herein.

75. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. amend. I. The Free Exercise Clause, which

has been applied to the states through the Fourteenth Amendment, "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005).

76. A strict scrutiny standard of review is appropriate in situations that involve "individualized governmental assessment." *Swartz v. Sylvester*, 53 F.4th 693, 700 (1st Cir. 2022). A strict scrutiny analysis is also appropriate where "[g]overnment enforcement of laws or policies ... substantially burden the exercise of sincerely held religious beliefs." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002) (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) and *Sherbert v. Verner*, 374 U.S. 398, 402–03 (1963)).

77. Strict scrutiny is appropriate because HSD's treatment of the Church's lease application constituted an individualized governmental assessment and HSD placed a substantial burden on the exercise of Plaintiffs' religious beliefs.

78. The Committee has sole discretion to provide religious or political exemptions to organizations when offering leases greater than a month-to-month. The Committee follows no particularized, objective criteria. Instead, they rely on their own subjective beliefs and opinions, as evidenced during the December 12, 2022 committee meeting.

79. HSD showed hostility toward the Church by outright denying their proposed lease arrangements without any legitimate reason while offering similar arrangements to other secular entities and activities who also espouse political messages.

80. Comments made at the committee meeting, in combination with the Committee's actions, further evidence significant hostility towards religion. Specifically, committee members expressed that leasing to the Church did not fit HSD's goals. Other members and Principal Walsh suggested that the high school's association with the Church and its religious beliefs would create a negative public image.

81. The Committee's religious discrimination and hostility toward the Church were guised as concerns as evidenced by the fact that the requested spaces are often utilized by secular organizations throughout the week. This history discloses that the Committee had as their object the suppression of religion.

82. Denial of Plaintiffs' lease proposal substantially burdened their religious exercise, as they have been unable to find a location that can accommodate their growing congregation and needs.

83. Defendant's decision to deny Plaintiffs a long-term lease was not narrowly tailored to further any legitimate, much less compelling, government interest.

84. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

85. WHEREFORE, Plaintiffs respectfully pray for the relief against Defendant as hereinafter set forth in the prayer for relief.

## COUNT III - VIOLATION OF MAINE'S PUBLIC ACCOMMODATION LAWS

86. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 85, as if fully set forth herein.

87. The Maine Human Rights Act declares that it is a civil right for every individual to have "equal access to places of public accommodation without discrimination because of race, color, sex, physical or mental disability, religion, ancestry or national origin." 5 M.R.S.A. § 4591 (2002). It is unlawful for a place of public accommodation to discriminate on the basis of religion. *Id.* § 4592(1). Hermon High School is a place of public accommodation. 5 M.R.S.A. § 4553(8)(J).

88. Unlawful discrimination includes for "any public accommodation…to directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of race or color, sex, sexual orientation or gender identity, age, physical or mental disability, religion, ancestry or national origin, any of the accommodations, advantages, facilities, goods, services or privileges of public accommodation, or in any manner discriminate against any person in the price, terms or conditions upon which access to accommodations, advantages, facilities, goods, services and privileges may depend." 5 M.R.S.A. § 4592.

89. HSD is the owner of Hermon High School, which provides facilities for public use and lease. HSD denied the Church the full and equal enjoyment of Hermon High School facilities on account of religion.

90. Specifically, HSD discriminated against the Church regarding the terms of Church's access to Hermon High School facilities – offering the Church a month-to-month term while offering other organizations extended lease terms.

91. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

92. WHEREFORE, Plaintiffs respectfully pray for the relief against Defendant as hereinafter set forth in the prayer for relief.

## COUNT IV - VIOLATION OF PLAINTIFFS' RIGHT TO FREE SPEECH
## UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

93. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 92, as if fully set forth herein.

94. The Church's religious expression is fully protected under the First Amendment, which prohibits the government from "abridging the freedom of speech." This prohibition applies to state and local governments through the Fourteenth Amendment.

95. Whether a state has unconstitutionally excluded a private speaker from use of a public forum depends on the nature of the forum. *See Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983). When the State establishes a limited public forum, the State cannot discriminate against speech on the basis of viewpoint, *Rosenberger v. Rector and Visitors of University of* Virginia, 515 U.S. 819, 829 (1995), and any restriction must be "reasonable in light of the purpose served by the forum." *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985).

96. A public school's exclusion of Christian ministries from meeting after hours at a school based on the ministry's religious nature is unconstitutional viewpoint discrimination, particularly where the school opens its limited public forum to activities that serve a variety of purposes. *See Good News Club v. Milford Central School*, 533 U.S. 98, 107-108 (2001).

97. There are various situations which will lead a court to conclude that, despite the seemingly neutral justifications offered by the government, nonetheless the decision to exclude speech is a form of impermissible discrimination. Statements by government officials on the reasons for an action can

indicate an improper motive. *See, e.g., Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977).

98. Here, the Committee denied the Church's six-month and one-year lease proposals because of the Church's views on same-sex marriage, abortion, gender-affirming medical care, conversion therapy for LGBTQ individuals, and sex education for youth.

99. The Committee's questions reflect an improper motive on behalf of HSD to exclude traditional viewpoints on these issues from use of the school facilities.

100. The Committee, on behalf of HSD, has singled out the Church's religious and political beliefs because they do not align with HSD's beliefs regarding same-sex marriage, abortion, gender-affirming medical care, conversion therapy, and sex education for youth while simultaneously offering long-term leases to secular organizations that align with HSD's beliefs.

101. The Committee's conduct, on behalf of HSD, also constitutes discrimination on the basis of content. The Committee also chose to deny the Church's lease proposals because they are a religious entity and espouse Christian beliefs.

102. Defendant's decision to deny Plaintiffs' a long-term lease was not narrowly tailored to further any legitimate, much less compelling, government interest.

103. The Committee's conduct was underinclusive because HSD allows other secular activities to lease its facilities who espouse political beliefs regarding abortion, conversion therapy, same-sex marriage, etc. The Committee's conduct was overinclusive because they sought to prohibit speech that does not "amount to harassing or discriminatory conduct." *Taking Offense v. State*, 66 Cal. App. 5th 696, 720 (2021).

104. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

105. WHEREFORE, Plaintiffs respectfully pray for the relief against Defendant as hereinafter set forth in the prayer for relief.

## COUNT V - DEFENDANT'S ACTIONS VIOLATE THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

106. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 105, as if fully set forth herein.

107. The Establishment Clause of the First Amendment to the U.S. Constitution mandates, among other things, that "Congress shall make no law respecting an establishment of religion…." U.S. Const. amend. I, §1. The Establishment Clause is incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution.

108. "The establishment of religion clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church….[n]either can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." *Everson v. Board of Educ. of the Township of Ewing, et al.*, 330 U.S. 1 (1947) (internal quotes omitted).

109. The Establishment Clause also prohibits the government from showing hostility toward religion and prohibits the government from showing favoritism toward one religious sect over another or towards non-religion and religion.

110. Defendant's denial of a long-term lease to the Church evidences the Defendant's open and rampant display of impermissible government hostility toward religious speech and religious free exercise, as HSD leases to similarly situated secular entities and activities.

111. Defendant's denial of a long-term lease to the Church sends the message to houses of worship and other religious entities that organizations that maintain traditional historically orthodox biblical beliefs about human sexuality are second-class institutions, outsiders, and not full members of the Hermon community.

112. Defendant's decision to deny Plaintiffs' a long-term lease was not narrowly tailored to further any legitimate, much less compelling, government interest.

Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

113. WHEREFORE, Plaintiffs respectfully pray for the relief against Defendant as hereinafter set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. That this Court render a Declaratory Judgment, including the following:

i. Defendant has violated RLUIPA by substantially burdening Plaintiffs' religious exercise and treating Plaintiffs unequally from similarly situated entities and activities;

ii. Defendant has violated Plaintiffs' right to free exercise of religion by discriminating against Plaintiffs due to their religious beliefs and by substantially burdening Plaintiffs' religious exercise;

iii. Defendant has violated Maine's Public Accommodation statutes by denying Plaintiffs a lease due to their religion;

iv. Defendant has violated Plaintiffs' rights to Free Speech by punishing them based upon the viewpoint and content of their messages;

v. Defendant has violated the Establishment Clause by impermissibly demonstrating hostility toward faith-based gatherings and activities and by impermissibly showing favoritism to certain non-religious gatherings and activities;

B. That this Court award Plaintiffs nominal damages and/or compensatory damages for the violation of Plaintiffs' constitutional rights.

C. That this Court adjudge, decree, and declare the rights and other legal relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

D. That this Court order Defendant to provide Plaintiffs either a six-month or year-long lease.

E.  That this Court declare Plaintiffs are a prevailing party and award Plaintiffs the reasonable costs and expenses of this action, including reasonably attorney's fees in accordance with 42 U.S.C. §§1983 and 1988 and 5 M.R.S.A. § 4614.

G.  That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted,
The Pines Church, a Maine non-profit corporation,
and Matt Gioia, an individual

DATED:  May 23, 2023

/s/ Wenonah M. Wirick
Wenonah M. Wirick, Esq., Bar No. 9634
Conley & Wirick, P.A.
31 Union Street
Bath, Maine 04530
Tel: (207) 443-3434
wwirick@conleyandwirick.com

Mariah Gondeiro, Esq., Bar No. 323683
*(Pro Hac Vice to be filed\*\*)*
Julianne Fleischer, Esq., Bar No. 337006
*(Pro Hac Vice to be filed\*\*)*
Advocates for Faith and Freedom
mgondeiro@faith-freedom.com
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Tel: (951) 600-2733

## VERIFICATION

I am the Pastor of The Pines Church, a Maine non-profit corporation, a party to this action, and authorized to make this verification for and on its behalf, and I make this verification for that reason.

I am informed, believe and on that ground allege that the matters stated in the foregoing VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES, are true. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of Maine that the foregoing is true and correct.

Executed on 5/26/23, at Hermon, Maine.

**THE PINES CHURCH, a Maine non-profit corporation**

By _____
Matthew J Gioia (May 22, 2023 17:38 EDT)
Matt Gioia, Pastor

Attorneys for Plaintiffs