# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **THE PINES CHURCH**, a Maine non-profit corporation; **Matt Gioia**, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>**HERMON SCHOOL DEPARTMENT;**<br><br>Defendant. | Civil Action No.: 1:23-cv-00214-LEW<br><br>**PLAINTIFFS THE PINES CHURCH'S AND MATT GIOIA'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| 1. Hermon School Department ("HSD") offers its school facilities to entities for long-term or short-term use arrangements.<br><br>**Evidence:** ECF No. 26, Stipulated Joint Record ("JR"), Exh. 10, pp. 408. | 1. |
| 2. There is no written HSD policy that defines a short-term use or a long-term use.<br><br>**Evidence:** JR, Exh. 9, pp. 319, 323-24. | 2. |
| 3. Superintendent Micah Grant ("Superintendent Grant") asserted that a one-year use is considered a long-term use, whereas anything less than a year, including a six-month use, is a short-term use.<br><br>**Evidence:** JR, Exh. 9, pp. 319, 323-24. | 3. |
| 4. The Superintendent is responsible for bringing action items, including long-term use proposals, before the Committee for their consideration and approval.<br><br>**Evidence:** JR, Exh. 9, pp. 306-07. | 4. |
| 5. The primary consideration for approving or denying facility use arrangements would be whether the arrangements conflict with needs for the space by the school community. | 5. |

| **Moving Parties' Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|
| **Evidence:** JR, Exh. 6, pp. 52. | |
| 6. The Building/Facilities Request Form is the only form required to be completed by organizations and seeks basic information regarding the areas requested and date/times requested.<br><br>**Evidence:** JR, Exh. 10, p. 408. | 6. |
| 7. The Building/Facilities Request Form does not ask for an entity's political or religious beliefs.<br><br>**Evidence:** JR, Exh. 10, p. 408. | 7. |
| 8. There are no other criteria outside the "Community Use of Facilities" policy considered in determining whether a potential applicant interested in using HSD facilities may utilize HSD space.<br><br>**Evidence:** JR, Exh. 9, pp. 336-37. | 8. |
| 9. HSD has approved various uses of HSD facilities ranging from three months to one year.<br><br>**Evidence:** JR, Exh. 10, pp. 412-437; Exh. 5, p. 47. | 9. |
| 10. Mr. Richard Productions was permitted to make use of HSD facilities from July 1, 2018, through June 30, 2019.<br><br>**Evidence:** JR, Exh. 10, pp. 412-31. | 10. |
| 11. HSD facilities are currently rented out by various organizations, including the Good News Club, Builder's Club, Cub Scouts, Girl Scouts, for periods of three to nine months.<br><br>**Evidence:** JR, Exh. 10, pp. 412-31. | 11. |
| 12. Many of these organizations meet weekly for the entirety of the school year.<br><br>**Evidence:** JR, Exh. 10, pp. 412-31. | 12. |
| 13. The Builder's Club has met weekly in various areas of Hermon Middle School for at least the past four school years.<br><br>**Evidence:** JR, Exh. 10, pp. 420, 422-29. | 13. |
| 14. HSD did not require any other organizations to provide their stances on | 14. |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| political and/or religious issues such as sexual orientation, gender reassignment care, conversion therapy, or abortion.<br><br>**Evidence:** JR, Exh. 4, pp. 43-45; Exh. 5, pp. 47-48; Exh. 9, pp. 337-38, 373; Exh. 10, pp. 412-437. | |
| 15. Mr. Richards Productions, who utilized HSD spaces for a period of one year, was not required to give a presentation to the Committee nor seek Committee approval to use HSD facilities.<br><br>**Evidence:** JR, Exh. 10, pp. 432-437; Exh. 5, pp. 47-48. | 15. |
| 16. The Pines Church ("TPC" or "the Church") is a non-denominational Christian church which maintains biblically orthodox religious beliefs and practices regarding human sexuality, marriage, and abortion, as most Christian churches have faithfully maintained for the past two thousand years.<br><br>**Evidence:** Declaration of Matt Gioia in Support of Summary Judgment ("Gioia Decl."), ¶ 9. | 16. |
| 17. TPC has sincerely held religious beliefs and gathers weekly for prayer, worship, and instruction.<br><br>**Evidence:** Gioia Decl., ¶ 10. | 17. |
| 18. The Church first began holding services at Spotlight Cinema in Orono, Maine in 2021.<br><br>**Evidence:** Gioia Decl., ¶ 12. | 18. |
| 19. When a congregation is at 70% of its current seating capacity, a larger venue is necessary to avoid stifling the growth of the church.<br><br>**Evidence:** Gioia Decl., ¶¶ 15-16; JR, Exh. 1, pp. 11-12; Exh. 7, pp. 141-42. | 19. |
| 20. Attendance records show that TPC reached its 70% threshold at Spotlight Cinema throughout 2022 and 2023.<br><br>**Evidence:** Exh. 7, pp. 106, 141-42; JR, Exh. 8, pp. 278-79; Gioia Decl., ¶ 14. | 20. |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| 21. After outgrowing its current venue at Spotlight Cinema, the Church began seeking new rental options and locations.<br><br>**Evidence:** Gioia Decl., ¶ 13-17; JR, Exh. 1, pp. 11-12; JR, Exh. 7, pp. 106, 141-42; Exh. 8, pp. 278-79. | 21. |
| 22. Pastor Matt Gioia ("Pastor Matt") contacted Superintendent Micah Grant on or around September 23, 2022 to discuss potential rental opportunities at HSD.<br><br>**Evidence:** Gioia Decl., ¶ 17. | 22. |
| 23. Superintendent Grant was receptive about the Church's proposal to lease school facilities and frequently expressed his willingness to help accommodate the needs of the Church.<br><br>**Evidence:** JR, Exh. 7, pp. 153, 155-57, 158-59; JR, Exh. 10, pp. 440-43. Gioia Decl., ¶ 17. | 23. |
| 24. On or around October 19, 2023, Superintendent Grant asked Pastor Matt to submit a written proposal to the Committee, followed by an oral presentation at the next school committee meeting to explain the Church's vision for renting HSD facilities.<br><br>**Evidence:** Gioia Decl., ¶¶ 18-19; JR, Exh. 7, pp. 158, 166; JR, Exh. 8, p. 271; JR, Exh. 10, p. 445. | 24. |
| 25. Pastor Matt submitted a written proposal to the Committee on October 26, 2022, requesting a one-year lease of Hermon High School facilities.<br><br>**Evidence:** Gioia Decl., ¶ 19; JR, Exh. 10, pp. 439. | 25. |
| 26. At all times, TPC remained open to any facility use arrangement consisting of six months or longer.<br><br>**Evidence:** Gioia Decl., ¶ 29. | 26. |
| 27. On November 7, 2022, Pastor Matt presented to the Committee information regarding the Church and its vision for leasing space at Hermon High School for a period of one year. | 27. |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| **Evidence:** Gioia Decl., ¶ 20; JR, Exh. 10, pp. 445. | |
| 28. At the committee meeting, Pastor Matt also extended an offer to rent the high school spaces for $1,000 a month – $400 above HSD's proposed rent amount – to display the Church's serious intent to invest in the Hermon community<br><br>**Evidence:** JR, Exh. 7, p. 159; Gioia Decl., ¶ 21. | 28. |
| 29. The Hermon School Department has not asked other entities or individuals who use or lease its space for periods longer than a month-to-month, including the Girl Scouts of America, the Cub Scouts of America, and Mr. Richards Productions, to give presentations to the Committee following their facility use form submissions or facility use inquiries.<br><br>**Evidence:** JR, Exh. 4, pp. 43-45; Exh. 5, pp. 47-48; Exh. 9, pp. 337-38, 373; Exh. 10, pp. 412-437. | 29. |
| 30. Following Pastor Matt's presentation, committee member Chris McLaughlin sent a November 8, 2022, email to HSD Superintendent Grant in which he stated he wanted to get a better sense of how the Church approaches issues of "diversity, equity and inclusion."<br><br>**Evidence:** JR, Exh. 8, pp. 281; Exh. 10, 449-50. | 30. |
| 31. The email contained follow-up questions from the committee member inquiring about the Church's beliefs on same-sex marriage, abortion, gender-affirming medical care, conversion therapy for LGBTQ individuals, and sex education for youth.<br><br>**Evidence:** JR, Exh. 8, pp. 281; Exh. 10, 449-50. | 31. |
| 32. This committee member has not asked these questions to any other individual or entity and no other Hermon School Department Committee member or Hermon School Department Employee has asked other | 32. |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| interested facility users or lessees these questions or similar questions.<br><br>**Evidence:** JR, Exh. 4, pp. 43-45; Exh. 5, pp. 47-48; Exh. 9, pp. 337-38, 373; Exh. 10, pp. 412-437; Exh. 11, pp. 489-90. | |
| 33. The Hermon School Department Facilities Use Form and Policy do not require that a long-term facility user or lessee ascribe to a certain set of religious or political beliefs.<br><br>**Evidence:** JR, Exh. 10, 407-11. | 33. |
| 34. Superintendent Grant forwarded the questions to Pastor Matt seeking the Church's views and stances on these issues to forward to the Committee for review.<br><br>**Evidence:** Gioia Decl., ¶ 22; JR, Exh. 8, pp. 280-81. | 34. |
| 35. Pastor Matt did not respond to the Committee's inquiries as to the Church's beliefs on same-sex marriage, abortion, gender reassignment care, conversion therapy for LGBTQ individuals, and sex education for youth.<br><br>**Evidence:** Gioia Decl., ¶ 23. | 35. |
| 36. At their December 12, 2022 committee meeting, while discussing the Church's lease proposals, the Committee voiced various concerns about the Church's lease proposal, none of which were related to whether the Church was a qualified lessee.<br><br>**Evidence:** Gioia Decl., ¶ 24-28; | 36. |
| 37. One committee member expressed that leasing to the Church did not fit the Committee's goals.<br><br>**Evidence:** Gioia Decl., ¶ 25. | 37. |
| 38. Other committee members and Principal Brian Walsh brazenly made discriminatory comments about the Church by suggesting HSD's association with the Church and its religious beliefs would create a negative public image.<br><br>**Evidence:** Gioia Decl., ¶ 26. | 38. |

| **Moving Parties' Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response and Supporting Evidence** |
|---|---|
| 39. Principal Walsh even insinuated that HSD could not associate themselves with the Church because their religious and political beliefs do not align with HSD's mission.<br><br>**Evidence:** Gioia Decl., ¶ 27. | 39. |
| 40. After discussion, one committee member motioned to move forward with offering the Church a 6-month facility use arrangement to which no committee member seconded.<br><br>**Evidence:** JR, Exh. 10, pp. 453. | 40. |
| 41. Another committee member motioned to move forward with a month-to-month facility use arrangement.<br><br>**Evidence:** JR, Exh. 10, pp. 453. | 41. |
| 42. Committee member Chris McLaughlin opposed the motion to move forward with a month-to-month arrangement.<br><br>**Evidence:** JR, Exh. 10, pp. 454. | 42. |
| 43. The Committee denied the Church's proposed facility use arrangements despite the Church meeting all of the use criteria and offering to pay substantially more than the monetary rental amount.<br><br>**Evidence:** JR, Exh. 10, pp. 453-54; JR, Exh. 7, p. 159; Gioia Decl., ¶¶ 21, 28. | 43. |
| 44. At no point in time did the Department identify any scheduling conflicts with the Church's lease proposals.<br><br>**Evidence:** JR, Exh. 6, pp. 52; Gioia Decl., ¶ 31. | 44. |
| 45. Neither the Committee nor Superintendent Grant the offered TPC any other facility use arrangement even though they had the power to do so and even though they offered similar arrangements to secular organizations.<br><br>**Evidence:** JR, Exh. 9, pp. 366-68; Gioia Decl., ¶ 30. | 45. |
| 46. Neither the Committee nor Superintendent Grant offered TPC the facility use form despite that allegedly being HSD's preferred process for determining lease arrangements. | 46.<br><br>**Evidence:** |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| **Evidence:** JR, Exh. 6, pp. 52; Gioia Decl., ¶ 32 | |
| 47. A month-to-month lease is not feasible for the Church because it makes it impossible to plan and budget and allows HSD to terminate the lease on short notice, leaving the Church with nowhere to go.<br><br>**Evidence:** Gioia Decl., ¶¶ 33, 35-36; JR, Exh. 1, pp. 12. | 47. |
| 48. The Church has been unable to find a location that can accommodate its growing congregation.<br><br>**Evidence:** Gioia Decl., ¶ 34; JR, Exh. 7, pp. 147. | 48. |
| 49. The Church is still renting a theater that cannot accommodate its needs.<br><br>**Evidence:** Gioia Decl., ¶ 34; JR, Exh. 1, pp. 11-12; Exh. 7, pp. 106, 141-42; Exh. 8, pp. 278-79. | 49. |
| 50. As a result of Defendant's refusal to provide Plaintiffs with their proposed facility use arrangement, Plaintiffs' congregational growth, and consequently, its tithes and offerings, have been stifled.<br><br>**Evidence:** Gioia Decl., ¶¶ 6, 16, 37. | 50. |
| 51. During Pastor Matt's extensive 15-year plus experience in church development and growth with Messenger International, he worked with over 20,000 churches.<br><br>**Evidence:** Gioia Decl., ¶¶ 2-5; JR, Exh. 1, pp. 7-8. | 51. |
| 52. His work and studies of church growth reflected a direct correlation between the growth of a church, the usable physical space of a church's venue, and the congregant's tithes and offerings giving.<br><br>**Evidence:** Gioia Decl., ¶ 6. | 52. |
| 53. TPC's congregation has far surpassed 70% of its seating capacity at its current venue.<br><br>**Evidence:** Gioia Decl., ¶ 14; Exh. 7, pp. 106, 141-42; Exh. 8, pp. 278-79. | 53. |

| Moving Parties' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|
| 54. Due to a lack of space, the congregation has been unable to organically grow, leading to economic loss and loss in future growth/opportunity.<br><br>**Evidence:** Gioia Decl., ¶¶ 6, 16, 33. | 54. |
| 55. Given the time constraints of Plaintiffs' current venue, Plaintiffs are unable to offer a second church service to account for its congregational growth.<br><br>**Evidence:** Gioia Decl., ¶ 14. | 55. |
| 56. The only viable option is a long-term facility use arrangement ranging from at least six months to a year.<br><br>**Evidence:** Gioia Decl., ¶¶ 35-36. | 56. |
| 57. As a result of HSD's disparaging treatment of TPC and the resulting lawsuit, members have left Plaintiffs' congregation and Plaintiffs have continued to suffer reputational harm and loss of goodwill.<br><br>**Evidence:** Gioia Decl., ¶ 37; JR, Exh. 1, p. 8. | 57. |

Respectfully submitted,
The Pines Church, a Maine non-profit corporation, and Matt Gioia, an individual

DATED: January 22, 2024

/s/ Bethany Onishenko
Bethany Onishenk, Esq. (AR 2022079)
Advocates for Faith and Freedom
bonishenko@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Tel: (951) 600-2733