UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| THE PINES CHURCH, a Maine non-profit corporation; Matt Gioia, an individual, | )<br>)<br>) |
| Plaintiffs | ) Civil Action No.: 1:23-cv-00214-LEW |
| | ) |
| vs. | )<br>) |
| HERMAN SCHOOL DEPARTMENT, | )<br>) |
| Defendant | ) |

**OPPOSING STATEMENT OF MATERIAL FACTS AND ADDITIONAL FACTS OF DEFENDANT HERMON SCHOOL DEPARTMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and D. Me. L.R. 56(c), Defendant Hermon School Department ("HSD") submits this opposing statement of facts and separate statement of additional facts.

1. Hermon School Department ("HSD") offers its school facilities to entities for long-term or short-term use arrangements. ECF No. 26, Stipulated Joint Record ("JR"), Exh. 10, pp. 408.

   **Admitted in part** (that HSD offers facilities for short-term use arrangements)**; Denied in part** (that HSD offers facilities for long-term leases)**.** The only support Plaintiffs offer for his allegation is citation to the HSD policy which speaks only to "long-term rental or lease of unused school facilities." HSD has never entered into a long-term lease for school facilities. ECF Doc. 28-1, PageID ##: 685-686 (Grant Decl. ¶ 5); ECF Doc. 26, PageID#: 190, 457-458 (Grant Dep. 27: 1-5)

2. There is no written HSD policy that defines a short-term use or a long-term use. JR, Exh. 9, pp. 319, 323-24.

   **Admitted.**

3. Superintendent Micah Grant ("Superintendent Grant") asserted that a one-year use is considered a long-term use, whereas anything less than a year, including a six-month use, is a short-term use. JR, Exh. 9, pp. 319, 323-24.

   **Admitted.**

4. The Superintendent is responsible for bringing action items, including long-term use proposals, before the Committee for their consideration and approval. JR, Exh. 9, pp. 306-07.

   **Admitted.**

5. The primary consideration for approving or denying facility use arrangements would be whether the arrangements conflict with needs for the space by the school community. JR, Exh. 6, pp. 52.

   **Admitted.**

6. The Building/Facilities Request Form is the only form required to be completed by organizations and seeks basic information regarding the areas requested and date/times requested. JR, Exh. 10, p. 408.

   **Denied.** The policy, the first page of which is cited by Plaintiffs, Policy KG, Community Use of School Facilities does not reference a Building/Facilities Request Form. It does, however, require in some instances that a certificate of liability insurance and a release of liability be completed. Doc. 26, PageID #: 548 (Policy KB ¶ 10).

7. The Building/Facilities Request Form does not ask for an entity's political or religious beliefs. JR, Exh. 10, p. 408.

   **Admitted.**

8. There are no other criteria outside the "Community Use of Facilities" policy considered in determining whether a potential applicant interested in using HSD facilities may utilize HSD space. JR, Exh. 9, pp. 336-37.

   **Admitted.**

9. HSD has approved various uses of HSD facilities ranging from three months to one year. JR, Exh. 10, pp. 412-437; Exh. 5, p. 47.

   **Denied.** Plaintiffs have cited no evidence to support use of facilities for a year period. The documents found at JR0412 – 0437 (ECF Doc. 26, PageID##: 551 – 756 include request for the school year only. Although Mr. Richard Productions filled out the necessary paperwork for usage during the year July 1, 2018, through June 30, 2019, it only used the facilities for a single day. Supp. Grant Decl. ¶ 4; ECF Doc. 26, PageID#: 571.

10. Mr. Richard Productions was permitted to make use of HSD facilities from July 1, 2018 through June 30, 2019. JR, Exh. 10, pp. 421-31.

**Denied.** Mr. Richard Productions only used the HSD facilities for a single day. Supp. Grant Decl. ¶ 4. The form at ECF Doc. 26, PageID#: 575 is a Community Use of School Facilities Waiver, Release and Agreement to Hold Harmless not a lease agreement.

11. HSD facilities are currently rented out by various organizations, including the Good New Club, Builder's Club, Cub Scouts, Girl Scouts, for periods of three to nine months. JR, Exh. 10, pp. 412-31.

    **Qualified.** HSD has authorized the use of school facilities but not under any leases. ECF Doc. 28-1, PageID ##: 685, 686 (Grant Decl. ¶¶5,6,7). The citations provided by Plaintiffs to JR pp. 412-31 (ECF Doc. 26, PageID##: 551- 571) are for the Building/Facilities Request Forms not lease agreements.

12. Many of these organizations meet weekly for the entirety of the school year. JR, Exh. 10, pp. 412-31.

    **Admitted.**

13. The Builder's Club has met weekly in various areas of Hermon Middle School for at least the past four school years. JR, Exh. 10, pp. 420, 422-29.

    **Admitted**

14. HSD did not require any other organizations to provide their stances on political and/or religious issues such as sexual orientation, gender reassignment care, conversion therapy, or abortion. JR, Exh. 4, pp. 43-45; Exh. 5, pp. 47-48; Exh. 9, pp. 337-38, 373; Exh. 10, pp. 412-437.

    **Qualified.** HSD did not require The Pines Church to provide its stance on political or religious issues either. Although Superintendent Grant forwarded McLaughlin's questions to Gioia, Gioia did not respond and the Church's request was considered nonetheless. ECF Doc. 26, PageID #: 310 (Gioia Dep. 117:2 – 9); ECF Doc. 26, PageID #: 592; Sup. Grant Decl. ¶ 7, Exhibit 5.

15. Mr. Richards Productions, who utilized HSD spaces for a period of one year, was not required to give a presentation to the Committee nor seek Committee approval to use HSD facilities. JR, Exh. 10, pp. 432-437; Exh. 5, pp. 47-48.

    **Admitted in part** (that Mr. Richards Productions was not required to give a presentation or seek Committee approval ); **denied in part** (that it utilized the space for one year). Mr. Richard Productions only used space for a single day. Suppl Grant Decl.¶ 4. The citations provided do not support the statement. The form at ECF Doc. 26, PageID#: 575 is a Community Use of School Facilities Waiver, Release and Agreement to Hold Harmless not a lease agreement. Mr. Richard Productions LLC only requested one day on the Building/Facilities Request Form. ECF Doc. 26, PageID #: 571.

16. The Pines Church ("TPC" or "the Church") is a non-denomination Christian church which maintains biblically orthodox religious beliefs and practices regarding human sexuality, marriage, and abortion, as most Christian churches have faithfully maintained for the past two thousand years. Declaration of Matt Gioia in Support of Summary Judgment ("Gioia Decl."), ¶ 9.

    **Admitted.**

17. TPC has sincerely held religious beliefs and gathers weekly for prayer, worship, and instruction. Gioia Decl., ¶ 10.

    **Admitted**.

18. The Church first began holding services at Spotlight Cinema in Orono, Maine in 2021. Gioia Decl., ¶ 12.

    **Admitted.**

19. When a congregation is at 70% of its current seating, a larger venue is necessary to avoid stifling the growth of the church. Gioia Decl., ¶¶ 15-16; JR, Exh. 1, pp. 11-12; Exh. 7, pp. 141-42.

    **Objection.** This statement should be stricken. To the extent this statement is supported by unidentified articles on church growth, the articles are not authenticated, they are hearsay, and would only be admissible through the testimony of an expert. To the extent it is supported by Gioia's opinion, that opinion would be in the nature of expert testimony and Gioia was not designated as an expert in this case.

    **Admitted.**

20. Attendance records show that TPC reached its 70% threshold at Spotlight Cinema throughout 2022 and 2023. Exh. 7, pp. 106, 141-42; JR, Exh. 8, pp. 278-279; Gioia Decl., ¶ 14.

    **Admitted.**

21. After outgrowing its current venue at Spotlight Cinema, the Church began seeking new rental options and locations. Gioia Decl., ¶ 13-17; JR, Exh. 1, pp. 11-12; JR, Exh. 7, pp. 106, 141-42; Exh. 8, pp. 278-79.

    **Admitted.**

22. Pastor Matt Gioia ("Pastor Matt") contacted Superintendent Micah Grant on or around September 23, 2022 to discuss potential rental opportunities at HSD. Gioia Decl., ¶ 17.

    **Admitted.**

23. Superintendent Grant was receptive about the Church's proposal to lease school facilities and frequently expressed his willingness to help accommodate the needs of the Church. JR, Exh. 7, pp. 153, 155-57, 158-59; JR, Exh. 10, pp. 440-43. Gioia Decl., ¶ 17.
    **Admitted.**

24. On or around October 19, 2023, Superintendent Grant asked Pastor Matt to submit a written proposal to the Committee, followed by an oral presentation at the next school committee meeting to explain the Church's vision for renting HSD facilities. Gioia Decl., ¶¶ 18-19; JR, Exh. 7, pp. 158, 166; JR, Exh. 8, p. 271; JR, Exh. 10, p. 445.

    **Admitted.**

25. Pastor Matt submitted a written proposal to the Committee on October 26, 2022, requesting a one-year lease of Hermon High School facilities. Gioia Decl., ¶ 19; JR, Exh. 10, pp. 439.

    **Admitted.**

26. At all times, TPC remained open to any facility use arrangement consisting of six months or longer. Gioia Decl., ¶ 29.

    **Qualified.** Although Gioia now says that the Church would have been "open" to a six-month term, he did not ask for it at the time. ECF Doc. 26, PageID#: 313.

27. On November 7, 2022, Pastor Matt presented to the Committee information regarding the Church and its vision for leasing space at Hermon High School for a period of one year. Gioia Decl., ¶ 20; JR, Exh. 10, pp. 445.

    **Admitted.**

28. At the committee meeting, Pastor Matt also extended an offer to rent the high school spaces for $1,000 a month - $400 above HSD's proposed rent amount – to display the Church's serious intent to invest in the Hermon community. JR, Exh. 7, p. 159; Gioia Decl., ¶ 21.

    **Admitted.**

29. The Hermon School Department has not asked other entities or individuals who use or lease its space for periods longer than a month-to-month, including the Girl Scouts of America, the Cub Scouts of America, and Mr. Richards Productions, to give presentations to the Committee following their facility use form submissions or facility use inquiries. JR, Exh. 4, pp. 43-45; Exh. 5, pp. 47-48; Exh. 9, pp. 337-38, 373; Exh. 10, pp. 412-437.

    **Admitted.**

30. Following Pastor Matt's presentation, committee member Chris McLaughlin sent a November 8, 2022, email to HSD Superintendent Grant in which he stated he wanted to

      get a better sense of how the Church approaches issues of "diversity, equity and inclusion." JR, Exh. 8, pp. 281; Exh. 10, 449-50.

      **Admitted.**

31. The email contained follow-up questions from the committee member inquiring about the Church's beliefs on same-sex marriage, abortion, gender-affirming medical care, conversion therapy for LGBTQ individuals, and sex education for youth. JR, Exh. 8, pp. 281; Exh. 10, 449-50.

    **Admitted.**

32. This committee member has not asked these questions to any other individual or entity and no other Hermon School Department Committee member or Hermon School Department Employee has asked other interested facility users or lessees these questions or similar questions. JR, Exh. 4, pp. 43-45; Exh. 5, pp. 47-48; Exh. 9, pp. 337-38, 373; Exh. 10, pp. 412-437; Exh. 11, pp. 489-90.

    **Admitted.**

33. The Hermon School Department Facilities Use Form and Policy do not require that a long-term facility user or lessee ascribe to a certain set of religious or political beliefs. JR, Exh. 10, 407-11.

    **Admitted.**

34. Superintendent Grant forwarded the questions to Pastor Matt seeking the Church's views and stances on these issues to forward to the Committee for review. Gioia Decl., ¶ 22; JR, Exh. 8, pp. 280-81.

    **Admitted in part** (that Grant forwarded the questions to Gioia); **denied in part,** (that Gioia's response would be forwarded to the committee). Gioia's responses to the questions would be passed "back to that committee member." Doc. 26, PageID #: 419-420.

35. Pastor Matt did not respond to the Committee's inquiries as to the Church's beliefs on same-sex marriage, abortion, gender reassignment care, conversion therapy for LGBTQ individuals, and sex education for youth. Gioia Decl., ¶ 23.

    **Admitted.**

36. At their December 12, 2022, committee meeting, while discussing the Church's lease proposals, the Committee voiced various concerns about the Church's lease proposal, none of which were related to whether the Church was a qualified lessee. Gioia Decl., ¶ 24-28.

6

    **Denied.** School Committee Members voiced concerns such as, school sponsored activities taking priority, conflicts with other organizations that have requested school facilities, , space in the parking lot, staffing issues, and if they could "actually get the building cleaned on Sundays.". Committee Member Stephanie Oiler even stated "I make a motion for a month-to-month lease. I think that we really have to factor in what Mr. Walsh is saying. It has nothing to do with the organization for me, it's more the amount of people that are going to be coming into our school, with the cleaning if we already have a shortage, we don't know how many people could end up coming. Hundreds could end up coming." Another Committee Member, Jesse Keith, stated "my concerns are around staffing and the Board prioritizing students first and their activities. We have show prep, band prep, that type of stuff. We need to make sure they have this first and foremost." Supp. Grant Decl. Exhibit 5 at 3 – 11.

37.     One committee member expressed that leasing to the Church did not fit the Committee's goals. Gioia Decl., ¶ 25.

    **Denied.** The Committee Member (McGlaughlin) stated, "trying to think about what the leasing of space is, how that manages to bolster our community?" Supp. Grant Decl. Exhibit 5 at 4.

38.     Other committee members and Principal Brian Walsh brazenly made discriminatory comments about the Church by suggesting HSD's association with the Church and its religious beliefs would create a negative public image. Gioia Decl., ¶ 26.

    **Denied.** On December 12, 2022, Mr. Walsh never made comments about religious beliefs creating a negative public image. Supp. Grant Decl. Exhibit 5. Mr. Walsh stated "we've never had a long-term lease, at least through my 21 years here, and I think there's a number of reasons we don't do that. There's a lot of variables we just opened up. No question, our students come first. Our programs should come first. We also don't know or have a sense of how this will be promoted – to Committee Member Eva Benjamin's question. If you put our high school's name with a church or another organization with different beliefs than the school has, I see that as a problem we're having. But again, that's where I stood, that's where I stand. Doesn't mean this organization won't do a great job, doesn't mean they won't support – hopefully – our mission as well. I just don't know. There's too many variables with that, and again, we have never done. What I would not want is for students to feel like a group or an organization that we are renting to – their vision, or their mission is now ours. And there's a blurred line that comes with that. I have nothing against this church, this reverend, or anything. We've just never said yes to something like this, so. Probably why it's in your hands. Cause you guys can make that decision." *Id* at 5-6.

39.     Principal Walsh even insinuated that HSD could not associate themselves with the Church because their religious and political beliefs do not align with HSD's mission. Gioia Decl., ¶ 27.

    **Denied.** On December 12, 2022, Mr. Walsh never made comments stating TPC religious and political beliefs do not align with HSD's mission. Mr. Walsh stated "what I would not

7

      want is for students to feel like a group or an organization that we are renting to – their vision, or their mission is now ours. And there's a blurred line that comes with that. I have nothing against this church, this reverend, or anything. We've just never said yes to something like this, so. Probably why it's in your hands. Cause you guys can make that decision**."** Grant Decl. Exhibit 5 at 7.

40. After discussion, one committee member motioned to move forward with offering the Church a 6-month facility use arrangement to which no committee member seconded. JR, Exh. 10, pp. 453.

    **Qualified.** The Committee Member moved to move forward with offering TPC a 6-month lease. ECF Doc. 26, PageID #: 592.

41. Another committee member motioned to move forward with a month-to-month facility use arrangement. JR, Exh. 10, pp. 453.

    **Qualified.** The Committee Member move to move forward with offering TPC a month-to-month lease. ECF Doc. 26, PageID #: 592.

42. Committee member Chris McLaughlin opposed the motion to move forward with a month-to-month arrangement. JR, Exh. 10, pp. 454.

    **Admitted.**

43. The Committee denied the Church's proposed facility use arrangements despite the Church meeting all of the use criteria and offering to pay substantially more than the monetary rental amount. JR, Exh. 10, pp. 453-54; JR, Exh. 7, p. 159; Gioia Decl., ¶¶ 21, 28.

    **Denied.** HSD offered TPC a month-to-month lease option. ECF Doc. 26, PageID #: 592-593.

44. At no point in time did the Department identify any scheduling conflicts with the Church's lease proposals. JR, Exh. 6, pp. 52; Gioia Decl., ¶ 31.

    **Denied.** The Committee discussed scheduling conflicts with other organizations at the meeting on December 12, 2022. Supp. Grant Decl. Exhibit 5 at 2-5.

45. Neither the Committee nor Superintendent Grant the offered TPC any other facility use arrangement even though they had the power to do so and even though they offered similar arrangements to secular organizations. JR, Exh. 9, pp. 366-68; Gioia Decl., ¶ 30.

    **Denied.** The citations do not support the statement. TPC was offered a month-to-month lease. ECF Doc. 26, PageID #: 592-593.

46. Neither the Committee nor Superintendent Grant offered TPC the facility use form despite that allegedly being HSD's preferred process for determining lease arrangements. JR, Exh. 6, pp. 52; Gioia Decl., ¶ 32.

    **Qualified.** Given that Gioia only asked for a one-year lease, the Facilities Use form did not apply. See ECF Doc. 28-2 PageID # 688 (Grant Decl. Exh. 1 – Policy KG).

47. A month-to-month lease is not feasible for the Church because it makes it impossible to plan and budget and allows HSD to terminate the lease on short notice, leaving the Church with nowhere to go. Gioia Decl., ¶¶ 33, 35-36; JR, Exh. 1, pp. 12.

    **Qualified.** The Church is currently using the Spotlight Cinema under a de facto month-to-month lease.

48. The Church has been unable to find a location that can accommodate its growing congregation. Gioia Decl., ¶ 34; JR, Exh. 7, pp. 147.

    **Admitted.**

49. The Church is still renting a theater that cannot accommodate its needs. Gioia Decl., ¶ 34; JR, Exh. 1, pp. 11-12; Exh. 7, pp. 106, 141-42; Exh. 8, pp. 278-79.

    **Admitted.**

50. As a result of Defendant's refusal to provide Plaintiffs with their proposed facility use arrangement, Plaintiffs' congregational growth, and consequently, its tithes and offerings, have been stifled. Gioia Decl., ¶¶ 6, 16, 37.

    **Objection.** The statement should be stricken because it is an opinion of an undesignated expert and/or because Gioia lacks personal knowledge sufficient to be competent to testify on this subject.

    **Denied.** TPC was offered a month-to-month lease. ECF Doc. 26, PageID #: 592-593.

51. During Pastor Matt's extensive 15-year plus experience in church development and growth with Messenger International, he worked with over 20,000 churches. Gioia Decl., ¶¶ 2-5; JR, Exh. 1, pp. 7-8.

    **Admitted**.

52. His work and studies of church growth reflected a direct correlation between the growth of a church, the usable physical space of a church's venue, and the congregant's tithes and offerings giving. Gioia Decl., ¶ 6.

    **Admitted**.

53. TPC's congregation has far surpassed 70% of its seating capacity at its current venue. Gioia Decl., ¶ 14; Exh. 7, pp. 106, 141-42; Exh. 8, pp. 278-79.

    **Admitted.**

54. Due to a lack of space, the congregation has been unable to organically grow, leading to economic loss and loss in future growth/opportunity. Gioia Decl., ¶¶ 6, 16, 33.

    **Objection.** The statement should also be stricken because it is an opinion of an undesignated expert, Gioia is not competent to give this testimony and it is speculative.

    **Admitted.**

55. Given the time constraints of Plaintiffs' current venue, Plaintiffs are unable to offer a second church service to account for its congregational growth. Gioia Decl., ¶ 14.

    **Admitted.**

56. The only viable option is a long-term facility use arrangement ranging from at least six months to a year. Gioia Decl., ¶¶ 35-36.

    **Denied.** TPC is currently in a month-to-month arrangement.

57. As a result of HSD's disparaging treatment of TPC and the resulting lawsuit, members have left Plaintiffs' congregation and Plaintiffs have continued to suffer reputational harm and loss of goodwill. Gioia Decl., ¶ 37; JR, Ex. 1, p. 8.

    **Objection**. The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds* of London, 637 F. 3d at 56-57. It is also speculative and lacking in foundation. Further, Plaintiffs have represented that this is not a part of their claim. Specifically, in his deposition, when asked "am I correct that the opposition that you received from the community is not a part of your claim in this case" Gioia responded, "that is correct." Doc. 26, PageID #: 209 (Gioia Dep. 16: 17-21).

    **Admitted.**

## ADDITIONAL FACTS

58. The Hermon School Department ("HSD") is a school district located in Hermon, Maine that operates an elementary school, a middle school and a high school. Declaration of Micah Grant ¶ 3, a copy of which attached to HSD's Statement of Material Facts, ECF Doc.28-1, PageID #: 685.

59. HSD permits members of the community to use school facilities pursuant to School Board Policy KG which provides, in relevant part:

> School facilities should be made available for appropriate community use when such facilities are not required for their primary purposes: the instruction of students and related school activities.

ECF Doc. 28-1, PageID ##: 685, 688 (Grant Decl. ¶ 4, Exhibit 1).

60. For at least the past 10 years, HSD has not leased any property to an outside party. ECF Doc. 28-1, Page ID#: 685-86 (Grant Decl. ¶ 5); ECF Doc. 26, PageID #: 327 (Grant Dep. 33:5 15).

61. HSD has developed a process whereby community members who wish to use facilities on a short term basis fill out a Facilities Use Request Form specifying what space they want, when they want it and any special requests they may have. ECF Doc. 28-1, PageID #: 686 (Grant Decl. ¶ 6).

62. Because HSD requires outside users of its facilities to indemnify and hold it harmless for injuries and other damage that may result during use, some entities provide HSD with a waiver the covers a yearlong period before the first time they use the facilities. Supplemental Declaration of Micah Grant ("Supp. Grant Decl."), attached hereto, at ¶ 3.

63. These waivers are not leases and do not give the party signing them permission to use the facilities. Rather, permission for use is granted pursuant to the facilities use request form. Supp. Grant Decl. ¶ 3.

64. HSD records only reflect that Mr. Richards Productions requested to use HSD facilities for a single day. Supp. Grant Decl. ¶ 4.

65. Generally, requests to use school facilities are granted although occasionally they are denied when space is not available. Stipulated Record, ECF Doc. 28-1, Page ID # 686 (Grant Decl. ¶¶ 9, 10).

66. When school facilities are in use on a date and time requested the request is denied. ECF Doc. 28-1, PageID # 686 (Grant Decl. ¶¶ 9, 10).

67. HSD makes its facilities available to a broad spectrum of groups including groups running athletic events, community groups such as the Girl Scouts, and religious groups such as the Good News Club. ECF Doc. 28-1, PageID ##: 688, 694 (Grant Decl. ¶ 11,); ECF Doc. 26, PageID ##: 454-455 (Grant Dep. 23:23- 24:5) and 512 – 531 (Grant Dep. Ex. 5).

68. HSD has never denied a request for any reason other than that the space requested was not available. ECF Doc. 28-1, PageID #: 687 (Grant Decl. ¶ 12).

69. On September 23, 2022, Plaintiff Gioia reached out to the HSD on behalf of The Pines Church to inquire about leasing space at the Hermon High School for it to hold its Sunday Services.  Stipulated Record, ECF Doc. 26, PageID #: 426.

70. Gioia wanted to rent the school's theater, its cafeteria and two classrooms every Sunday from 7:00am to 1:00pm for a one-year period.  Stipulated Record, ECF Doc. 10, PageID #: 66 (Amended Complaint ¶34); ECF Doc. 11, Page ID # 99 (Answer to Amended Complaint ¶34), ECF Doc. 26, PageID ##: 294 (Gioia Dep. 101:13-15), 296-297 (Gioia Dep. 103:25-104:1).

71. This was the first time that Superintendent Grant had ever been asked about a lease for the use of school facilities.  ECF Doc. 28-1, PageID #: 681 (Grant Decl. ¶ 5).

72. Upon receiving the request from Gioia, Superintendent Grant consulted the Board Policy on community use which mandated a Board vote for the granting of a long-term lease so he decided to refer the request to the Board.  ECF Doc. 28-1, PageID #: 682 (Grant Decl. ¶ 17).

73. On November 7, 2022, Gioia presented to HSD the Church's "heart in wanting to serve the needs of the community."  Doc. 26, PageID #: 307 (Gioia Dep. 114:19).

74. Gioia asked for a one-year lease at the November 7, 2022 meeting.  Supp. Grant Decl. ¶ 5.

75. Also at that meeting, Gioia invited School Committee members to visit the Church.  Supp. Grant Decl. ¶ 6.

76. On November 8, 2022, Chris McLaughlin, an HSD Board member, reached out to Gioia with follow up questions regarding Gioia's presentation.  ECF Doc. 26, PageID #: 422.

77. Gioia responded that he would like the HSD member to "funnel all questions through the Superintendent." ECF Doc. 26, PageID #: 421.

78. In response, McLaughlin sent an email to Superintendent Grant asking about The Pines Church's views on same sex marriage, access to abortion, access to gender affirming medical care, conversion therapy, and sexual education for youth. ECF Doc. 26, PageID ##: 419-420.

79. On November 10, 2022, Superintendent Grant sent Gioia the member's follow up questions. ECF Doc. 26, PageID ##: 310 (Gioia Dep. 117: 16-19); 292 (Gioia Dep. 99:17-100:3), 322 (Gioia Dep. 129:2 – 5); 419 (Gioia Dep. Ex. 10).

80. Gioia never answered the questions asked in Mclaughlin's email.  ECF Doc. 26, PageID #: 310 (Gioia Dep. 117:2 – 9).

81. On December 12, 2022, the HSD School Board met to consider The Pines Church's proposal.  ECF Doc. 26, PageID #: 592; Sup. Grant Decl. ¶ 7, Exhibit 5.

82. At that meeting School Committee Member Keith expressed the following concerns about giving The Pines Church a one-year lease: "My biggest concern is locking up an area for a full year when you don't know exactly how it's going to impact. . . especially an auditorium with shows, show prep, concerts, concert prep, and they're actually using up some of the other classrooms. We don't know what we don't know." Supp. Grant Decl. Exhibit 5 at pg. 4.

83. When asked for his opinion about a long term lease to the Church, High School Principal Walsh explained: "We've never had a long-term lease, at least through my 21 years here, and I think there's a number of reasons we don't do that. There's a lot of variables we just opened up. No question, our students come first." Supp. Grant Decl. Exhibit 5 at pgs. 7-8.

84. Walsh also expressed some concern about maintenance issues: "we have a difficult time with clean-up from events on Saturday, or after a ball game. We have a problem with getting custodial support or coverage. I haven't sorted out Sunday, but again, if there's a plan for that – I don't know what that plan is – but it doesn't fall on us to cover, then I don't think it would be an issue. But anyone who comes in here and cleans and who works with the school obviously has to be fingerprinted, background check, all those pieces. Maybe that would be on the lease, again I haven't seen one of these. We've never done this, so there's a lot of unknown variables that I'm not sure about. Supp. Grant Decl. Exhibit 5 at pg.7.

85. Walsh also expressed concern about community confusion. "If you put our high school's name with a church or another organization with different beliefs than the school has, I see that as a problem we're having. But again, that's where I stood, that's where I stand. Doesn't mean this organization won't do a great job, doesn't mean they won't support – hopefully – our mission as well. I just don't know. There's too many variables with that, and again, we have never done. What I would not want is for students to feel like a group or an organization that we are renting to – their vision, or their mission is now ours. And there's a blurred line that comes with that. I have nothing against this church, this reverend, or anything. We've just never said yes to something like this." Supp. Grant Decl. Exhibit 5 at pg. 7.

86. Walsh went on to say that he didn't "want it looking like Herman High School is sponsoring a church. That's where – again – this is where the blur comes in. So again, that's something you guys ensure." Supp. Grant Decl. Exhibit 5 at 9.

87. In response, Superintendent Grant explained: "So I just want to emphasize that there is no establishment clause violation per policy if we were to allow the church to use it. And I think it's also important to recognize that we have to make sure that we are consistent in the way we apply our practice to other organizations." Supp. Grant Decl. Exhibit 5 at. 8.

88. School Committee Member Keezer added: "Obviously, they don't want to solicit in school or post things like that, that go against our policy. I'm sure they can abide by that respectfully. So, I don't see how them using the address so people can find it has anything

to do with affiliation with the school. It's no more than a building." Supp. Grant Decl. Exhibit 5 at 9.

89. School Committee Member Oiler explained her concerns: "For me it's just. . . it's the number of people that are now going to be into the school. I think that we really have to factor in what Mr. Walsh is saying. It has nothing to do with the organization for me, it's more the amount of people that are gonna be coming into our school, with the cleaning if we already have a shortage, we don't know how many people could end up coming. Hundreds could end up coming." Supp. Grant Decl. Exhibit 5 at. 9-11.

90. School Committee Member Keith said: "My biggest concern is locking up an area for a full year when you don't know exactly how it's going to impact. . . especially an auditorium with shows, show prep, concerts, concert prep, and they're actually using up some of the other classrooms. We don't know what we don't know."   He also said "my concerns are around staffing and the Board prioritizing students first and their activities. We have show prep, band prep, that type of stuff. We need to make sure they have this first and foremost." Supp. Grant Decl. Exhibit 5 at 5.

91.  HSD School Board Member Oiler moved to offer the Pines Church a month-to-month lease and that motion passed.  ECF Doc. 26, PageID #: 592-593.

92. Plaintiffs' religious beliefs were never discussed when deciding whether or not to offer a long-term lease. ECF Doc. 26, PageID ##: 460 (Grant Dep. 29:6-9).  Supp. Grant Decl. Exhibit 5.

93. HSD's offer of a month-to-month lease was rejected by The Pines Church. ECF Doc. 26, PageID #: 314 (Gioia Dep. 121:8-14).

94. Plaintiffs currently have a month-to-month lease at the Spotlight Theater.  ECF Doc. 26, PageID #: 314 (Gioia Dep. 121:15-22).

95. McLaughlin voted against the motion to give The Pines Church a lease because he felt that the request should go through the facilities use request process.  ECF Doc. 26, PageID #: 191 (Answer to Interrogatory No. 5).

96. Gioia never asked for a lease for less than a one-year period.  ECF Doc. 26, PageID #: 313 (Gioia Dep. 120:3 -16).

97. The HSD School Committee  does not consider a lessee's religious beliefs when deciding whether to allow use of its facilities.  ECF Doc. 26, PageID #: 611 (McLaughlin Dep. 14: 18-21).

Dated:  February 12, 2024               */s/ Melissa A. Hewey*
                                         Melissa A. Hewey
                                         *Attorney for Defendant*
                                         *Hermon School Department*

DRUMMOND WOODSUM
84 Marginal Way, Ste. 600
Portland, ME  04101
(207) 772-1941
mhewey@dwmlaw.com