UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| THE PINES CHURCH and MATT GIOIA | ) ) ) ) |  |
| Plaintiffs | ) ) |  |
| v. | ) ) | Civil Action No. 1:23-cv-00214-LEW |
| HERMON SCHOOL DEPARTMENT | ) ) ) ) |  |
| Defendant | ) |  |

# TRIAL BRIEF OF DEFENDANT HERMON SCHOOL DEPARMENT

## FACTUAL BACKGROUND

The Hermon School Department is a municipal school unit serving the municipality of Hermon, Maine. Maine law provides that municipal school units are governed by school committees, 20-A M.R.S. § 29, and that school committees are "responsible for the management of the schools and shall provide for their custody and care." 20-A M.R.S. § 1001(2). The School Committee in Hermon consists of seven elected members, two of whom represent RSU 87[1] and only vote on certain issues relating to the education of RSU 87 students at the Hermon High School.

The School Committee has adopted Policy KG governing use by the community of school facilities. Plaintiffs' Trial Exhibit 2. That policy provides that "[s]chool facilities should be made available for appropriate community use when such facilities are not required for their primary purposes: the instruction of students and related school activities." *Id*. Policy KG

---

[1] Students in RSU 87 attend Hermon High School and consequently two RSU 87 board members represent RSU 87 on the Hermon School Committee. They only vote on matters that affect their district and did not vote on the issues relevant to this case.

further provides that "the long-term rental of lease of unused school facilities shall be authorized by the Hermon School Committee upon the recommendation of the Superintendent of Schools. The occasional or short-term use of school facilities shall be authorized by the school principal subject to regulations established by the Superintendent of Schools in accordance with [certain listed guidelines]." *Id.* The evidence at trial will show that the School Department regularly provides permission to various groups, including religious groups, to use the facilities on an occasional or short-term basis. The School Department has, however, never entered into a *lease* of school property, let alone a lease for a significant period of time.

In the fall of 2022, at the urging of then School Committee member Haily Keezer, Matthew Gioia, the pastor of The Pines Church, reached out the High School secretary to inquire about leasing the High School gym for Sunday services. After she expressed that the school lacked staffing to accommodate such a request, he reached out to the then Superintendent, Micah Grant.[2] Mr. Grant reviewed Policy KB and then scheduled Pastor Gioia to make his request to the School Committee on November 7, 2022. Pastor Gioia made a presentation to the Hermon School Committee in which he talked about the Church and asked for a one-year lease of the cafeteria, auditorium and three classrooms. He invited members of the School Committee to visit the Church and learn more about it.

Two days have Pastor Gioia's s presentation, one School Committee member, Chris McLaughlin, sent an email to Pastor Gioia asking for information on the Church's beliefs on same-sex marriage, access to safe and affordable abortion and gender affirming care, and similar topics. When Pastor Gioia asked that all communication go through the superintendent, Mr.

---

[2] Mr. Grant was Superintendent of Hermon until June 30, 2024. He is currently living in Hermon and is employed as an associate pastor of the Cornerstone Baptist Church.

McLaughlin forwarded his questions to Micah Grant who forwarded them on to Pastor Gioia. Pastor Gioia did not respond to the request.

The School Committee was scheduled to vote on the Church's request at their December 8th meeting. In preparation for that meeting, the District's regular legal counsel was asked to provide some guidance to the School Committee on two question relating to a request by a church to rent space at a school: (1) must the Committee deny the request on the grounds that permitting the Church to access school space constitutes an unlawful establishment of religion; or (2) would refusing to lease the space to the Church because it is a religious organization violate the Church's free exercise rights. Counsel responded to the Chair's request with a memorandum dated December 6, 2025, which was sent to all Committee members before the meeting. Defendant's Exhibit 4. In that memorandum, counsel answered "no" to the first question and "likely yes" to the second. The memorandum concluded that "it should be noted that the analysis above does not mean that the Board *must* approve the Church's lease request. Rather, it means that it should apply the terms of the Policy using the same analysis and criteria it would for any other, non-religious organization." *Id.* This memorandum was sent to all members of the Hermon School Committee and the School Department anticipates that they will testify that they read it and followed the advice of counsel.

The meeting was held on December 8. Various School Committee members discussed their concerns with the proposed lease including, from Chair Keith, "my biggest concern is locking up an area for a full year when you don't know how it's going to impact," and from Stephanie Oiler "for me it's just. . . it's the number of people that are now going to be into the school". Plaintiffs' Exhibit 7. After a full discussion by the School Committee members,[3]

---

[3] The entire discussion is reflected on video so the Court will be able to see the School Committee members and hear what they had to say. Although their testimony as to what motivated their votes is relevant to the issues in this

Kristen Shorey moved to grant the Church a 6-month lease but that motion failed for lack of a second. Then Stephanie Oiler moved to grant the Church a month-to-month lease, Jesse Keith seconded the motion, and it passed by a vote of 4 (Keezer, Keith, Oiler and Shorey) to 1 (McLaughlin). The Church rejected the offer of a month-to-month lease claiming that it needed dependable space for a longer period.

The School Department expects that the foregoing facts will largely be uncontested. That is because it is not *what* happened that is disputed here but *why* it happened. On that critical issue, the School Department believes that the evidence will show that while each School Committee member had a slightly different reason for deciding not to give the Church a lengthy lease, all of them had reasons that were consistent with their obligations not related in any way to the fact that the Church is a church and all but Mr. McLaughlin were willing to give the relationship a try with a month-to-month lease.

## LEGAL ISSUES

At their core, all of Plaintiffs' claims come down to whether the School Committee voted not to extend a long-term lease to The Pines Church because it is a religious organization. If Plaintiffs are able to prove that by a preponderance of the evidence, the Church will likely prevail on one or more of its claims. If they are not, judgment should be entered in favor of the Hermon School Department on all counts of the Amended Complaint.

### A. Facial Challenge to Policy KG

Before turning to the elements of each of the Plaintiffs' claims, the School Department believes it is useful to identify the principle legal issue raised by Plaintiffs that is <u>not</u> a part of

---

case, Plaintiffs have listed as witnesses the two non-voting members of the Committee. It is the School Department's position that their testimony is not relevant and should be excluded. The same goes for a number of other witnesses listed on Plaintiffs' extensive witness list.

this case. Specifically, the Church has recently articulated a desire to mount a facial challenge to policy KG, essentially arguing that Policy KG is a prior restraint because it gives unqualified discretion to school administration as to whether to allow outside of use of its facilities. This effort should be rejected for two reasons.

First, no facial challenge to Policy KG was pled in the complaint or the amended complaint and indeed until very recently the Church specifically represented to the Court and the Defendant that it was not presenting a facial challenge to Policy KG. *See* Order Denying Motion for Summary Judgment ECF Doc. 51, PageID #: 916 (observing that "[a]t oral argument, Plaintiffs' counsel disclaimed a challenge to Policy KG"). The Church's effort to amend its complaint at this late date should be rejected.

Second, there is no merit to the argument. The Plaintiffs' perfunctory discussion of this issue which they assert is "dispositive" in this case, Pl. Obj. to Final Pretrial Order, ECF Doc. 117, PageID #:1189, indicates that they are arguing that Policy KB is an illegal prior restraint[4] because it grants unfettered discretion as to whether to approve a facilities use request to the Superintendent. Putting aside that this argument is focused on the wrong section of Policy KB,[5] it fails as a matter of law. Contrary to what Plaintiffs appear to suggest, not every policy or practice that gives discretion to a governing body to make a decision is a prior restraint. Indeed, all over the country, local school boards and municipalities have adopted policies, regulations and practices that give local officials discretion to make choices about a host of things necessary

---

[4] Plaintiffs make reference to overbreadth in their discussion, see ECF Doc.117, PageID #: 118 but fail to articulate how the Facilities Use Policy is overbroad.

[5] Policy KB allows the principal to make decisions on occasional or short-term use of school facilities subject to regulations adopted by the Superintendent but leaves the decision concerning long-term rental or lease of unused facilities to the School Committee. Beginning when it declined the School Committee's offer of a month-to-month lease and continuing throughout the course of this ligation, the Church has been very clear that short term or occasional use was unacceptable. Policy KB require authorization by the School Committee of long-term leases. Plaintiff's Exhibit 2.

to make local government run. It is only policies that give officials unfettered control over the exercise of a *constitutional right* that may be prior restraints. *See, e.g. generally FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 226 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004) ("It is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."); *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750 (1988). Indeed, every case cited by Plaintiffs involves a direct restraint on speech. The policy at issue here, that simply provides that when school facilities are not in use, school officials can decide how they should be used is not unconstitutional on its face.

### B.  The Legal Standards Applicable to Plaintiffs' Claims

#### 1.  Municipal Liability under Section 1983 for Plaintiffs' Federal Claims

As this Court stated in its decision on the parties' summary judgment motions, "resolving Plaintiffs' constitutional claims entails determining whether 'the legislative body acted out of a constitutionally impermissible motive' by declining to offer Plaintiffs a long-term lease on account of their religions status." Order on Motions for Summary Judgment ECF Doc. 51, PageID#: 906, *quoting Scott-Harris v. City of Fall River,* 134 F.3d 427 (1st Cir. 1997), *rev'd sub nom. Bogan v. Scott-Harris,* 523 U.S. 44 (1998).

"The baseline principle is well-settled: legislators' bad motives may be proven by either direct or circumstantial evidence." *Id.* at 436. In *Scott-Harris,* the First Circuit observed that it might be "overly mechanistic" to hold the plaintiff "to strict proof of the subjective intentions of

6

a numerical majority of council members" and agreed that "in a sufficiently compelling case the requirement that the plaintiff prove bad motive on the part of the majority of members of the legislative body might be relaxed and a proxy accepted instead." *Id.* at 438.  However, even in such a compelling case the First Circuit said, the plaintiff must muster evidence "of both (a) bad motive on the part of at least a significant bloc of legislators, and (b) circumstances suggesting the probably complicity of others." *Id.*.  Ultimately, the First Circuit held "[t]he key is likelihood:  Has the plaintiff proffered evidence, direct or circumstantial which makes it appear more probable (i.e. more likely than not) that discrimination was the real reason underlying the [challenged governmental action]?" *Id; see also Osher v. Univ. of Maine Sys.,* 703 F. Supp. 2d 51, 75 (D. Me. 2010).

This is not the type of "compelling case" referred to by the Appeals Court, but regardless, in order to prevail, Plaintiffs must prove by a preponderance of the evidence that at least three of the five School Committee members were motivated by discriminatory animus.  The School Department believes – particularly since four out of five members voted to give the Church a lease --  that they will not be able to do so.

### 2.  The Free Exercise Claim

Count I of the amended complaint is a claim for violation of the Free Exercise Clause of the U.S. Constitution. The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise of religion." U.S. Const. amend. I. It "affords an individual [or entity] protection from certain forms of governmental compulsion [but] it does not afford an individual a right to dictate the conduct of the Government's internal procedures." *Bowen v. Roy,* 476 U.S. 693, 700 (1986).   In order to prevail on this claim Plaintiffs would have to prove by a preponderance of the evidence that the governmental actions at issue discriminated against some

or all religious beliefs or regulated or prohibited conduct because it is undertaken for religious reasons. Order on Motion for Summary Judgment ECF Doc. 27 PageID #: 674, q*uoting Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*, 508 U.S. 520, 532.  The School Committee members all stated their reasons for voting as they did and there is simply no evidence – much less a preponderance of evidence, that they were motivated in any way by the religious nature of the Church.

### 3. *The Maine Human Rights Act Claim*

In Count II of the amended complaint, Plaintiffs claim that the School Committee's failure to give The Pines Church a long-term lease amounted to public accommodations discrimination under the Maine Human Rights Act ("MHRA").  A school such as the Hermon High School can be a "place of public accommodation" under the law.  5 M.R.S. § 4553(8)(J).  However, that is only the first step in the analysis.  The MHRA provides in relevant part:

> It is unlawful public accommodations discrimination, in violation of this Act:
>
> **1. Denial of public accommodations.**  For any public accommodation or any person who is the owner, lessor, lessee, proprietor, operator, manager, superintendent, agent or employee of any place of public accommodation to directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of race or color, sex, sexual orientation or gender identity, age, physical or mental disability, religion, ancestry or national origin, any of the accommodations, advantages, facilities, goods, services or privileges of public accommodation, or in any manner discriminate against any person in the price, terms or conditions upon which access to accommodations, advantages, facilities, goods, services and privileges may depend.

Thus, in order to prevail on this claim, Plaintiffs would first need to provide that they were denied access to the public accommodation  "with regard to the advantages or privileges offered to the public. " *Maine Human Rights Comm'n v. Le Club Calumet,* 609 A.2d 285286 (Me. 1992).  Since the School Department has never extended a long-term lease to any member of the public,

8

it believes Plaintiffs' claim will fail right out of the gate. If it does not, Plaintiffs would next need to prove that the School Department refused or withheld from the Plaintiffs lease of the requested duration on account of their religion, meaning that but for their religion, they would have been granted the lease.

    4.    *The First Amendment Claim*

The Plaintiffs have also asserted, in Count III, a claim against the Hermon School Department for violation of the right to freedom of speech guaranteed by the First Amendment of the United States Constitution. "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disputes that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 799-800 (1985). This claim has never been fully explained and given that the Church never stated any specific viewpoint, this claim remains a mystery to the School Department.

    5.    *The Establishment Clause Claim*

Finally Count IV of the amended complaint is a claim for violation of the Establishment Clause which prohibits the government from making any law "respecting an establishment of religion." U.S. Const. amend 1. In other words, "one religious denomination cannot be officially preferred over another, . . . nor can the government prefer religion over non religion." *Calvary Chapel of Bangor v. Mills,* 459 F. Supp. 3d 273, 287 (D. Me. 2020). A governmental action does not violate the Establishment claims if it has a secular legislative purpose, its principal effect does not advance or inhibit religion and it does not foster excessive government entanglement with religion." *Freedom From Religion Found v. Hanover Sch. Dist.* 626 F.3d 1, 9 (1st Cir. 2010). This claim, like the others, is dependent upon Plaintiffs' ability to prove discriminatory

animus on the part of a majority of the voting members of the School Committee. As discussed about, the School Department does not believe they will be able to carry this burden.

     6.     *Possible Relief*

To briefly address Plaintiffs' possible relief even though the School Department is confident that the Court will render judgment in its favor on all counts of the amended complaint, the relief Plaintiffs have requested in this case has been somewhat of a moving target. However, in their Motion to Convert, Plaintiffs stated "Plaintiffs are seeking only permanent injunctive relief, declaratory relief, nominal damages in the amount of $1.00, and attorneys' fees and costs." , ECF Doc. 132, PageId #: 1580. Plaintiffs have therefore waived any right to request compensatory damages or civil penalties under the Maine Human Rights Act.

Dated: October 3, 2025          /s/ *Melissa A. Hewey*
                                       Melissa A. Hewey
                                       Attorney for Defendant Hermon School Department
                                       Drummond Woodsum
                                       84 Marginal Way, Suite 600
                                       Portland, Maine 04101-2480
                                       Tel: (207) 772-1941
                                       Fax: (207) 772-3672
                                       mhewey@dwmlaw.com